UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>v.<br>ROHIT KUMAR,<br><br>                        Defendant. | Case No.: 19-MJ-10821-BGS-JLS<br><br>**ORDER AFFIRMING JUDGMENT OF MAGISTRATE JUDGE**<br><br>(ECF No. 23) |

Presently before the Court is Defendant Rohit Kumar's Notice of Appeal to the District Court (ECF No. 23), which seeks review of Magistrate Judge Bernard G. Skomal's Final Judgment (ECF No. 31, amended by ECF No. 37) finding Defendant guilty of one count of attempted illegal entry by an alien in violation of 8 U.S.C. § 1325(a)(1). The notice of appeal is timely, and this Court has jurisdiction pursuant to 18 U.S.C. § 3402. In support of the appeal, Defendant filed an Opening Brief ("Open. Br.," ECF No. 34). The United States filed an Answering Brief ("Answer," ECF No. 35), and Defendant responded with a Reply (ECF No. 36). Having reviewed the Parties' briefing and the law, the Court **AFFIRMS** the judgment of the Magistrate Judge.

/ / /

# BACKGROUND

On September 21, 2019, at approximately 3:10 a.m., Border Patrol Agent Herrera-Mondragon ("Herrera") was on duty when he observed an individual later identified as Defendant climbing over the International Boundary Fence ("IBF") near First Street and Andrade Avenue in Calexico, California. ECF No. 30 at 24-25.[1] Defendant was dressed in dark clothing and, when he reached the bottom of the fence, began running northbound on Andrade Avenue away from the IBF. *Id.* at 26-27. Agent Herrera followed Defendant in his service vehicle as other agents approached the area from other directions. *Id.* at 29. After running about 50 yards, Defendant "just stopped." *Id.* Agent Herrera apprehended the Defendant, placed him in his service vehicle, and transported him approximately 20 yards back to the agent's original station. *Id.* at 29, 43. There, Agent Herrera conducted a field interrogation of Defendant in the English language. *Id.* at 29, 32. Defendant was not handcuffed, but was seated in the rear seat of the Agent's service vehicle with the door open and the agent blocking his exit. *Id.* at 42, 44. Defendant indicated his name, that he is from India, and that he did not have documentation to be in this country legally. *Id.*, at 33-34. Defendant was then transported by other agents to the Central Processing Center in El Centro. *Id.* at 35.

Following a bench trial, Magistrate Judge Skomal found Defendant guilty of the crime charged and sentenced him to time served. *Id.* at 72-73; Judgment, ECF No. 31. Judgment was imposed on November 5, 2019, *id.*, and this appeal was timely filed 13 days later, on November 18, 2019 (ECF No. 23). S*ee* Fed. R. Crim. P. 58(g)(2)(B) (establishing 14-day timeframe for appealing a magistrate judge's judgment of conviction or sentence).

# LEGAL STANDARD

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the

---

[1] All pincites to documents in the record refer to the blue numbers Bates-stamped in the upper right-hand corner by the District's CM/ECF system.

district in which the offense was committed." 18 U.S.C. § 3402. "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(d). Accordingly, a magistrate judge's factual findings are reviewed for clear error, *see United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001). Under the clearly erroneous standard of review, "findings of fact must be accepted as true unless upon review of the record we are left with the definite and firm conviction that a mistake has been committed." *United States v. Wadsworth*, 830 F.2d 1500, 1506 (9th Cir. 1987). On the other hand, "the magistrate's legal conclusions, including challenges to the sufficiency of evidence and questions of statutory interpretation, are reviewed de novo." *United States v. Zepeda-Rodriguez*, No. 19-MJ-24357-LL-TWR, 2022 WL 1289691, at *3 (S.D. Cal. Apr. 29, 2022). On de novo review, the Court asks whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000) (internal citations omitted).

## DISCUSSION

Defendant raises five challenges to his conviction. First, Defendant contends that the Magistrate Judge erred in declining to suppress Defendant's field statements. Second, Defendant contends that he had the right to a jury trial given "the impact of this charge on Mr. Kumar's ability to seek asylum, combined with the custodial punishment." Open. Br. at 11. Third, Defendant argues that the Government failed to prove that Defendant intended to enter the United States free from official restraint. Fourth, Defendant claims that Section 1325(a)(1)'s reference to a "designated" place of entry violates the non-delegation doctrine and is void for vagueness. Lastly, Defendant claims that this District's "Streamline Court" violates equal protection and due process. The Court will address each of these arguments in turn.

/ / /

/ / /

## I. Admissibility of Field Statements

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established that "[t]he Constitution requires that a person be advised of certain rights if they are 'in custody' and 'subjected to interrogation.'" *United States v. Carroll*, 102 F. Supp. 3d 1134, 1136 (N.D. Cal. 2015) (quoting *Miranda*, 384 U.S. at 467–68). Under *Miranda*, a suspect is "in custody" if they have been "deprived of [their] freedom of action in any significant way." 384 U.S. at 444. "To determine whether the suspect was in custody, we first examine the totality of the circumstances surrounding the interrogation." *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). "The subject of the inquiry is 'whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'" *United States v. Medina-Villa*, 567 F.3d 507, 519 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981), *as amended* (June 23, 2009)). "Whether a person is 'in custody' for purposes of *Miranda* is a mixed question of law and fact warranting de novo review." *United States v. Galindo-Gallegos*, 255 F.3d 1154 (9th Cir. 2001).

"Of course, not all questioning by law enforcement officers triggers the warning requirement." *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). "A person detained during a *Terry* stop is generally not 'in custody' for *Miranda* purposes." *United States v. Ramos*, No. 21-10184, 2023 WL 2853516, at *1 (9th Cir. Apr. 10, 2023). "Generally, '[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons.'" *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) (quoting *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987)). "To lawfully conduct a '*Terry* stop,' an officer only needs a 'reasonable suspicion that criminal activity may be afoot.'" *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1157 (C.D. Cal. 2010) (quoting *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009)). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for

*particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).

During a *Terry* stop, law enforcement officers "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without first *Mirandizing* the detainee. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). The inquiry must be "reasonably related in scope to the justification" for the *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 29 (1968); *see also Berkemer*, 468 U.S. at 439. "If, however, the individual is asked questions going 'beyond a brief *Terry*-type inquiry,' the individual is entitled to *Miranda* warnings." *United States v. Davis*, 530 F.3d 1069, 1081 (9th Cir. 2008) (quoting *United States v. Kim*, 292 F.3d 969, 976 (9th Cir. 2002)).

The Ninth Circuit has found that no *Miranda* warning is required during a *Terry* stop near the border so long as "questioning is limited to the suspect's name, date of birth, and citizenship status." *Ramos*, 2023 WL 2853516, at *1; *see also United States v. Arce-Rodriguez*, 697 F. App'x 497, 498 (9th Cir. 2017) ("During such temporary detentions at the border, it is not necessary to provide a *Miranda* warning before asking questions reasonably related to Appellant's immigration status."); *United States v. Cabrera-Alejandre*, No. CRIM. 06-CR-1437-L, 2007 WL 935599, at *1 (S.D. Cal. Mar. 20, 2007) ("Because the agents had reasonable suspicion to make a *Terry* stop, they were permitted to ask Defendant questions 'reasonably related in scope to the justification for their initiation.'" (quoting *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005))). It follows that, if Border Patrol agents have reasonable suspicion justifying a *Terry* stop near the border, they may ask the detainee questions related to their citizenship status prior to issuing a *Miranda* warning. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) ("[W]hen an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion.").

Defendant argues that the Magistrate Judge erred by failing to suppress his field

statements because Defendant was in custody at the time of questioning, and he had not yet been notified of his *Miranda* rights. Defendant argues that in addition to the indicia of custody present in the encounter, such as the agent physically grabbing the defendant and placing him in his service vehicle, driving him to the original observation spot, and blocking Defendant's exit from the vehicle during questioning, the "Zero-Tolerance Policy for Criminal Illegal Entry" and Supreme Court precedent allowing Border Patrol agents to consider a person's race as a relevant factor in such cases confirm that no reasonable person in Defendant's shoes would have believed they were free to leave after brief questioning. Open. Br. at 9-10. The Government responds that the Defendant's questioning did not require a *Miranda* warning because Defendant's "detention was the quintessential *Terry* stop near the border that the Ninth Circuit has repeatedly found non-custodial." Answer at 5.

Here, the Court finds that the Magistrate Judge did not err in admitting Defendant's field statements to Agent Herrera, as the statement was made during a non-custodial *Terry* stop. Agent Herrera's stop and inquiry was justified by reasonable suspicion of criminal activity because he observed Defendant climb over the IBF. This circumstance clearly provided reasonable suspicion that Defendant had illegally entered the United States as an alien. Consequently, prior to issuing a *Miranda* warning, Agent Herrera was permitted to ask Defendant questions "reasonably related in scope to the justification" for the stop. *Terry*, 392 U.S. at 29. The questioning in this case did not exceed these bounds; the agent merely asked Defendant's name, nationality, and whether he possessed any immigration documents.

The Court is not persuaded that at the time of the questioning Defendant was in custody for *Miranda* purposes. "A valid stop is not transformed into an arrest merely because law enforcement agents momentarily restrict a person's freedom of movement." *United States v. Patterson*, 648 F.2d 625, 633 (9th Cir. 1981). Agents "may impose such a restriction to maintain the status quo while making an initial inquiry, provided the force displayed is not excessive under the circumstances." *Id., citing United States v. Gomez*,

642 F.3d 1124, 1126-27 (9th Cir. 1981). Although Defendant was placed in Agent Herrera's vehicle and transported a short distance prior to questioning, Defendant was not handcuffed, nor did Agent Herrera draw his weapon or make any threats. The Defendant was transported only 20 yards from where he was apprehended, and less than one minute elapsed between the initial encounter and questioning. ECF 30 at 43. Under these circumstances, the Court is not persuaded that a "reasonable innocent person in such circumstances would conclude that after brief questioning, he or she would not be free to leave." *Medina-Villa*, *supra,* 567 F.3d at 519. Furthermore, the Court is not persuaded that either the "zero-tolerance policy" in effect at the time of the encounter[2] or the consideration of race as a factor in the *Brignoni-Ponce* analysis[3] would have any impact upon the reasonable innocent person's expectation of whether they would be free to leave after brief questioning. Neither factor can fairly be viewed as creating an expectation that every person of color encountered by Border Patrol will be indiscriminately arrested regardless of circumstance, as suggested by Defendant's argument. Thus, the Magistrate Judge did not err in admitting Defendant's field statements.

## II.   Right to Jury Trial

The Sixth Amendment guarantees to certain criminal defendants "the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend VI. "It is well established," however, "that the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes

---

[2] A year prior to Defendant's arrest, then-Attorney General Sessions implemented a "zero-tolerance policy" requiring prosecution of all migrants who unlawfully crossed the southwestern border. Open. Br. at 9, n. 1.

[3] In *United States v. Brignoni-Ponce*, *supra,* 422 U.S. at 884, the Supreme Court recognized that "any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a vehicle in the border area." Such factors include: the proximity to the border, the usual patterns of traffic on the particular road, previous experience with alien traffic, recent illegal border crossings in the area, the driver's behavior, aspects of the vehicle, and "the characteristic appearance of persons who live in Mexico." *Id.* at 884-85. The *Brignoni-Ponce* Court specifically rejected reliance on the apparent Mexican ancestry of the vehicle's occupants as the sole justification for the vehicle stop in that case but did recognize Mexican appearance as a relevant factor. *Id.* at 886-87.

or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Lewis v. United States*, 518 U.S. 322, 325 (1996) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)). "[T]o determine whether an offense is petty, [courts] consider the maximum penalty attached to the offense." *Id.* at 326. "An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious." *Id.*

First-time violators of § 1325(a)(1) are subject to a fine or imprisonment "not more than 6 months, or both." 8 U.S.C. § 1325(a)(1). Defendant concedes that the section's six-month statutory maximum "creates a presumption that the offense is 'petty' for Sixth Amendment purposes." Open. Br. at 10. Nevertheless, Defendant contends that "the impact of this charge on Mr. Kumar's ability to seek asylum, combined with the custodial punishment, is sufficiently "severe" to warrant a jury trial." *Id.* The Government, on the other hand, argues that the collateral consequences of a § 1325 conviction do not necessitate a trial by jury. Answer at 5-6 (citing *United States v. Rodriguez-Rodriguez*, 742 F.2d 1194, 1195 (9th Cir. 1984)).

Here, the Court finds that Defendant was not entitled to a jury trial. Section 1325(a)(1) "does not provide for deportation [or denial of asylum] as a consequence of conviction," and neither deportation nor denial of asylum "automatically flow from a § 1325 conviction." *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1157 (S.D. Cal. 2019). Accordingly, neither deportation nor denial of asylum are penalties authorized by the legislature for violations of § 1325(a)(1). Indeed, Defendant concedes that a § 1325 conviction only raises the "*potential* to serve as both a discretionary and regulatory bar" to a grant of asylum. Open. Br. at 12 (emphasis added). The mere possibility of deportation or denial of asylum, however, "cannot 'convert [a] border-crossing misdemeanor into a 'serious offense' for which the Sixth Amendment requires a trial by jury.'" *Ramirez-Ortiz*, 370 F. Supp. 3d at 1157 (quoting *Rodriguez-Rodriguez*, 742 F.2d at 1195); *see also United States v. Velasquez-Luna*, No. 18-MJ-11463-WQH, 2019 WL 338947, at *2 (S.D. Cal. Jan.

28, 2019) (concluding "that a collateral consequence of deportation after conviction [for violation of § 1325(a)(2)] does not authorize an additional penalty or indicate that the legislature considered this misdemeanor charge a serious offense subject to the jury trial right"); *United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *4 (S.D. Cal. Sept. 11, 2020) (concluding magistrate judge did not err in holding bench trial where defendant was charged with violation of 8 U.S.C. § 1325(a)(1)); *United States v. Campos-Atrisco*, No. 3:19-MJ-24683-KSC, 2020 WL 7181086, at *7 (S.D. Cal. Dec. 7, 2020) (finding violation of 8 U.S.C. § 1325(a)(1) "is a petty offense not subject to the jury trial provisions of the Sixth Amendment").

The Court denies Defendant's appeal on this ground.

**III.    Proof of Intent to Enter Free from Official Restraint**

In order to convict an alien of attempted illegal reentry into the United States, the government must prove that the alien crossed into the United States with the specific intent to enter into the country free from official restraint. *United States v. Argueta-Rosales*, 819 F.3d 1149  (9th Cir. 2016).  Defendant contends that the Magistrate Judge erred in concluding that the government met its burden of establishing specific intent under the facts of this case.  Defendant argues that if he were trying to avoid contact with Border Patrol, he would have not run into a residential area and would not have "just stopped" when he first saw the Border Patrol agents. Open. Br. at 14-15.  The Government responds that Defendant's actions were consistent with someone who wanted to enter the United States free from official restraint, and that if Defendant had wanted to be apprehended he would have climbed over the fence and sat down once he made it into the United States. Answer at 7.

Viewed in the light most favorable to the prosecution, *see United States v. Corona-Garcia*, *supra,* the Court agrees with Magistrate Judge Skomal's assessment that there was sufficient evidence of specific intent to support a conviction.  Defendant was observed climbing over the IBF and Agent Herrera began following Defendant in his marked service vehicle after Defendant climbed through the fence and began running northbound.  ECF

30 at 26-27. It was 3:12 a.m., Defendant was wearing dark-colored clothing, there were no other people in the area, and Defendant did not stop running until cornered by the agents. *Id.* at 27-29. Under these circumstances, any rational trier of fact could have concluded that Defendant intended to enter the United States free from official restraint. Consequently, the Court denies Defendant's appeal on this ground.

## IV. Non-Delegation Doctrine and Vagueness

Defendant contends that Section 1325(a)(1)'s reference to a "designated" place of entry violates the non-delegation doctrine and is void for vagueness. Open. Br. at 15. The Ninth Circuit rejected this argument during the pendency of this appeal. *See United States v. Melgar-Diaz*, 2 F.4th 1263, 1270 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 813 (2022) ("Having rejected defendants' main argument that Congress gave immigration officers indeterminate guidance for designating times and places of entry, we easily reject the suggestion that § 1325(a)(1)—a longstanding and routinely used provision—is unconstitutionally vague on its face."). Accordingly, the Court denies Defendant's appeal on this ground.

## V. Equal Protection and Due Process

Defendant argues that his prosecution via this District's "Streamline Court" violates equal protection and due process. Open. Br. at 3. The Ninth Circuit rejected this argument during the pendency of this appeal. *See United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir.), *cert. denied*, 142 S. Ct. 513 (2021) ("[W]e conclude that the government's decision to prosecute first-time illegal entry separately from other petty offenses passes constitutional muster."). Accordingly, the Court denies Defendant's appeal on this ground.

## CONCLUSION

In light of the foregoing, the Court finds that the Magistrate Judge did not err in admitting Defendant's field statements; that Defendant was not entitled to a jury trial; that the Magistrate Judge did not err in finding that the Government proved Defendant's specific intent to enter the United States free from official restraint beyond a reasonable doubt; that Section 1325(a)(1) does not violate the non-delegation doctrine and is not

unconstitutionally vague; and that Defendant's prosecution did not violate either his equal protection or due process rights.  Accordingly, the Court **AFFIRMS** the judgment of the Magistrate Judge.

**IT IS SO ORDERED.**

Dated:  November 13, 2023

Hon. Janis L. Sammartino
United States District Judge